FILED

AUG 10 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: PESTICIDE ACTION NETWORK NORTH AMERICA; NATURAL RESOURCES DEFENSE COUNCIL, INC., | No. 14-72794 |
| | |
| PESTICIDE ACTION NETWORK NORTH AMERICA; NATURAL RESOURCES DEFENSE COUNCIL, INC., | OPINION |
| Petitioners, | |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | |
| Respondent. | |

Petition for a Writ of Mandamus
To the Environmental Protection Agency
Argued and Submitted June 1, 2015
Seattle, Washington

Before: O'SCANNLAIN, TASHIMA, and McKEOWN, Circuit Judges.

Opinion by Judge McKEOWN, Circuit Judge:

Although filibustering may be a venerable tradition in the United States Senate, it is frowned upon in administrative agencies tasked with protecting human health. Pesticide Action Network North America and the Natural Resources Defense Council have been waiting for years for the United States Environmental Protection Agency to respond to their administrative petition requesting a ban on the pesticide chlorpyrifos. Instead, they've received a litany of partial status reports, missed deadlines, and vague promises of future action. We recognize the scientific complexity inherent in evaluating the safety of pesticides and the competing interests that the agency must juggle. However, EPA's ambiguous plan to possibly issue a proposed rule nearly nine years after receiving the administrative petition is too little, too late. This delay is egregious and warrants mandamus relief. We order EPA to issue a full and final response to the petition no later than October 31, 2015.

## BACKGROUND

EPA is tasked with registering all pesticides. A pesticide may be registered only if EPA finds that it is "safe," meaning that "there is a reasonable certainty that no harm will result from aggregate exposure to the pesticide chemical residue, including all anticipated dietary exposures and all other exposures for which there is reliable information." 21 U.S.C. § 346a(b)(2)(A)(ii). EPA may "revoke" a

2

pesticide's registration whenever it determines that its use does not meet safety standards. *Id.* § 346a(b)(2)(A)(i).

The Food Quality Protection Act of 1996, Pub. L. No. 104-170, directed EPA to take a fresh look at the safety of existing pesticides. The statute required EPA to examine every pesticide then in use to ensure compliance with relevant safety standards. The Act gave EPA ten years to complete an initial review of registered pesticides, 21 U.S.C. 346a(q)(1), and ordered the agency to repeat the process using updated scientific data every fifteen years, 7 U.S.C. § 136a(g)(1)(A)(iii).

During this initial review, EPA determined that the pesticide at issue here, chlorpyrifos, was not being used in an altogether safe manner. In 2000, EPA announced an agreement with pesticide manufacturers to ban the application of chlorpyrifos in residential areas. Carol M. Browner, *Dursban Announcement* (June 8, 2000), http://www2.epa.gov/aboutepa/dursban-announcement. Soon after, the agency issued both interim and final decisions permitting the continued use of chlorpyrifos in agricultural areas.

Pesticide Action Network North America and the Natural Resources Defense Council (collectively Pesticide Action Network) vehemently disagree with EPA's assessment that chlorpyrifos is safe. Alleging that EPA ignored evidence of

3

the pesticide's toxicity, Pesticide Action Network joined a federal lawsuit to block the use of chlorpyrifos for any purpose. Complaint, *United Farm Workers v. Adm'r, EPA*, No. 5:07-CV-3950-JF (N.D. Cal. Aug. 1, 2007), ECF No. 1. That suit was dismissed as time-barred after we clarified the jurisdictional requirements for challenging EPA's pesticide safety determinations. Dismissal Order, *United Farm Workers v. Adm'r, EPA*, No. 5:07-CV-3950-JF (N.D. Cal. Apr. 27, 2010), ECF No. 98 (citing *United Farm Workers v. Adm'r, EPA*, 592 F.3d 1080 (9th Cir. 2010)).

Pesticide Action Network also filed an administrative petition with EPA in September 2007 ("the administrative petition"). EPA published a notice of that petition in the Federal Register, 72 Fed. Reg. 58,845 (Oct. 17, 2007), but otherwise did not issue any formal response to it. In July 2010 Pesticide Action Network filed suit in federal district court in New York demanding a final response to the administrative petition. Complaint, *N.R.D.C. v. EPA*, No. 10-CV-05590 (S.D.N.Y. July 22, 2010), ECF No. 1. Five months later, EPA and Pesticide Action Network filed a stipulation staying the suit based on EPA's promise that it would issue a human health risk assessment by June 2011 and a final response by November 2011. Stipulation and Order, *N.R.D.C. v. EPA*, No. 10-CV-05590 (S.D.N.Y. Dec.

4

22, 2010), ECF No. 17. EPA was a month late in issuing the human health risk assessment and failed to publish a final response to the administrative petition.

In April 2012, Pesticide Action Network filed a petition for a writ of mandamus in the Ninth Circuit ("the 2012 mandamus petition").[1] EPA responded by publishing a partial denial of the administrative petition and stating that it would finalize its response to the remaining issues raised in the petition between "February 2013, should it issue a complete denial of the administrative petition, [and] February 2014, should it decide either to issue a proposed rule, or a final rule without prior proposal, to revoke or modify the existing chlorpyrifos tolerances." EPA's Response to Petition for Writ of Mandamus at 29, *In Re Pesticide Action Network North America*, No. 12-71125 (9th Cir. July 24, 2012).

After mediation efforts failed to yield a resolution, we denied the 2012 mandamus petition. *In re Pesticide Action Network N. Am.*, 532 F. App'x 649 (9th Cir. 2013). In concluding that mandamus relief was inappropriate at that time, we noted that EPA had a "concrete timeline" for issuing a final response by February 2014, and made clear that "our denial of the petition is without prejudice to seeking the same relief at a future date in the event EPA fails to act." *Id.* at 651–52.

---

[1] The New York proceedings were subsequently dismissed.

As an astute reader might have guessed, EPA's timeline proved not to be "concrete." When EPA failed to issue a final response to the administrative petition in February 2014 as promised, Pesticide Action Network filed a renewed petition for a writ of mandamus in September 2014, which is the subject of this opinion. While that petition was pending, EPA issued a preliminary final denial of the administrative petition on January 14, 2015. 80 Fed. Reg. 1909–11 (Jan. 14 2015). EPA initially informed us that it would finalize its response to the administrative petition in "summer 2015," but later backtracked and cautioned that it was unlikely to meet that deadline.

We heard oral argument on June 4, 2015. In response to questioning regarding when EPA intended to issue a final response to the administrative petition, counsel for EPA was unable to offer a firm date. However, counsel stated that EPA would know by June 30 whether the public comments received in response to its preliminary final denial of the administrative petition necessitated further proceedings. We thus ordered EPA to inform the court of the date by which it intended to either "finalize the preliminary denial of [the] administrative petition" or issue any other "final ruling" in this matter. *In Re Pesticide Action Network N. Am.*, 790 F.3d 875 (9th Cir. June 10, 2015).

In response to that order, EPA asserted that its concerns about contamination of drinking water had convinced it to take more aggressive action to restrict chlorpyrifos. EPA stated that its current plan is to publish, before April 15, 2016, a proposed rule to "revoke all chlorpyrifos tolerances"—in essence, to impose an outright ban on the pesticide. In that update, however, EPA also noted that certain labeling changes could render such action "unnecessary." Dissatisfied with the uncertainty of EPA's response, Pesticide Action Network reiterated its request that we issue a writ of mandamus compelling EPA to issue a "final" ruling on the administrative petition.

## ANALYSIS

The only question before us is whether EPA's delay in responding to the administrative petition warrants the extraordinary remedy of mandamus. We conclude that it does. EPA has spent nearly a decade reviewing Pesticide Action Network's data and arguments. Even in response to our unambiguous order directing EPA to specify a date for issuing a "final ruling" on the administrative petition, the agency has still not stated with certainty when it intends to take formal action to grant or deny it. Issuing a writ of mandamus is necessary to end this cycle of incomplete responses, missed deadlines, and unreasonable delay.

The legal standard governing our analysis is neither complex nor contested by the parties. The Administrative Procedure Act instructs agencies to complete their work "within a reasonable time," and grants courts of appeal the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). Our authority to issue a writ of mandamus is contained in the All Writs Act, 28 U.S.C. § 1651. Issuing a writ of mandamus directing a federal agency to act, however, is "an extraordinary remedy justified only in 'exceptional circumstances.'" *In re Cal. Power Exch. Corp.*, 245 F.3d 1110, 1120 (9th Cir. 2001) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988)). Mandamus is warranted in those rare instances when the agency's delay is "egregious." *Id.* at 1124 (internal quotation marks omitted).

Our inquiry is governed by the six-factor test articulated in *Telecommunications Research and Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984), known as the "*TRAC* factors." *See Cal. Power Exch. Corp.*, 245 F.3d at 1124–25. These factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

8

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 79–80 (citations and internal quotation marks omitted).

Two years ago, in July 2013, we applied the *TRAC* factors to Pesticide Action Network's 2012 mandamus petition and found that they did not yet weigh in favor of judicial action. We explained that the "complexity of the issue" justified EPA's delay in answering the petition, and noted that the agency had many competing priorities consuming its resources. *In re Pesticide Action Network*, 532 F. App'x at 651. Although Pesticide Action Network alleged that chlorpyrifos harmed human health and safety, the urgency of action was mitigated somewhat because EPA "regulates almost entirely in the realm of human health" and had certified the safety of chlorpyrifos in 2006. *Id.* Critically, we recognized that issuing a writ was unnecessary in light of EPA's "concrete timeline" for finally resolving the petition in "February 2014." *Id.*

9

EPA would have us adhere to the reasoning and holding of our prior disposition. But time changes things, including our weighing of the *TRAC* factors.

First and foremost, the "rule of reason" has tipped sharply in favor of Pesticide Action Network. Two years ago, EPA had been considering the administrative petition for six years and had a "concrete timeline" for issuing a final ruling in a matter of months. Now, the delay has stretched to eight years, and when we asked EPA to specify the precise date by which it would issue a "final ruling" on Pesticide Action Network's petition, it demurred. Instead, EPA told us it intends to initiate a proposed rulemaking next year, in April 2016. Not only is a *proposed* rulemaking not a *final* ruling, EPA also indicated that it might not issue such a rule at all if settlement discussions with industry are fruitful. These prospective conversations introduce yet another uncertainty in the process. What's more, EPA's latest status report says that it has "concerns about the risks to farmworkers" who are exposed to chlorpyrifos and states that "complex regulatory proceedings" may be necessary. Yet EPA does not offer a timetable for concluding or even initiating those proceedings. EPA's response isn't a "concrete timeline" for resolving the petition—it's a roadmap for further delay. EPA has stretched the "rule of reason" beyond its limits.

Another factor that has moved the needle is the threat posed by chlorpyrifos to human health. Although EPA determined that chlorpyrifos was "safe" in 2006, it has backtracked significantly from that pronouncement over the last several years. EPA recently imposed new labeling requirements on the chemical, and in its latest status report, EPA reported that chlorpyrifos poses such a significant threat to water supplies that a nationwide ban on the pesticide may be justified. We do not take this representation lightly. Yet EPA offers no acceptable justification for the considerable human health interests prejudiced by the delay. In view of EPA's own assessment of the dangers to human health posed by this pesticide, we have little difficulty concluding it should be compelled to act quickly to resolve the administrative petition.

Finally, although there is no allegation of impropriety underlying EPA's delay, we note that the agency has a significant history of missing the deadlines it has set in these proceedings. The D.C. Circuit's comment in *Public Citizen Health Research Group v. Brock* seems particularly apt here: "In light of the fact that [the agency's] timetable representations have suffered over the years from a persistent excess of optimism, we share petitioners' concerns as to the probable completion date." 823 F.2d 626, 629 (D.C. Cir. 1987) (per curiam). EPA's unreasonable

11

delay in responding to the administrative petition has already been the subject of three non-frivolous lawsuits. There should not be a fourth.

## CONCLUSION AND ORDER

The petition for a writ of mandamus is granted.[2] EPA is directed to issue either a proposed or final revocation rule or a full and final response to the administrative petition by October 31, 2015. If EPA chooses to issue a proposed revocation rule, it shall inform the court by October 31, 2015, of the timeline for finalizing the proposed rule. The court will consider modification of this deadline only if EPA documents that extraordinary circumstances not already presented to the court will prevent its compliance.

**The petition for a writ of mandamus is GRANTED.**

---

[2] Petitioners' Bill of Costs, filed June 17, 2015, is denied as moot.

# COUNSEL OF RECORD

Patti A. Goldman (argued), Matthew Baca, and Kristen Boyles, Earthjustice, Seattle, WA, for Petitioners.

Sam Hirsche, Acting Assistant Attorney General, and Erica Zilioli (argued), United States Department of Justice, Environmental Enforcement Section, Washington, D.C.; Mark Dyner, Office of General Counsel, United States Environmental Protection Agency, Washington, D.C., for Respondents.