**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE NATURAL RESOURCES DEFENSE COUNCIL, INC., | No. 19-71324 |
| NATURAL RESOURCES DEFENSE COUNCIL, INC.,<br>*Petitioner*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER, in his capacity as Administrator of the United States Environmental Protection Agency,<br>*Respondents.* | OPINION |

Petition for Writ of Mandamus

Argued and Submitted February 10, 2020
San Francisco, California

Filed April 22, 2020

Before:  R. Guy Cole, Jr.,* Ronald M. Gould,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Gould

## SUMMARY**

### Mandamus / Environmental Protection Agency

The panel granted a petition for a writ of mandamus, and ordered the U.S. Environmental Protection Agency (EPA) to respond within 90 days of the final date of this decision to the administrative petition of the Natural Resources Defense Council (NRDC) requesting that the EPA end the use of a dangerous pesticide, tetrachlorvinphos (TCVP), in household pet products.

Under the Federal Insecticide, Fungicide, and Rodenticide Act, the EPA has the task of determining which pesticides may be registered for sale and distribution.  If the risks to the environment or human health are unreasonable, the EPA may initiate proceedings to cancel the pesticide's registration, pursuant to 7 U.S.C. § 136d.  Any interested person may petition the EPA to cancel a registered pesticide, and the EPA is required by the Administrative Procedure Act to resolve the petition "within a reasonable time." 5 U.S.C § 555(b).

---

* The Honorable R. Guy Cole, Jr., Chief Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

In determining whether the EPA's delay in responding to NRDC's petition merited mandamus relief, the panel considered the *TRAC* factors established in *Telecomms. Research and Action Ctr. (TRAC) v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984). The panel held that the *TRAC* factors supported mandamus relief where, for more than a decade, the EPA frustrated NRDC's ability to seek judicial review by withholding final agency action, while endangering the wellbeing of millions of children. The panel concluded that the EPA unreasonably and egregiously delayed the performance of its statutory duties on a critical matter of public health, and the circumstances warranted the extraordinary remedy of issuing a writ of mandamus.

If the EPA initiates cancellation proceedings, the panel ordered the EPA to file status reports with the court until registration of TCVP has been cancelled. If the EPA denies NRDC's petition on the merits, then NRDC may appeal that final agency action under the standards of the Administrative Procedure and any other applicable law.

## COUNSEL

Ian Fein (argued), Natural Resources Defense Council, San Francisco, California; Mae Wu, Aaron Colangelo, and Peter J. DeMarco, Natural Resources Defense Council, Washington, D.C.; for Petitioner.

Eileen T. McDonough (argued), Environmental Defense Section; Jonathan D. Brightbill, Principal Deputy Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; for Respondents.

**OPINION**

GOULD, Circuit Judge:

For more than a decade, the Natural Resources Defense Council (NRDC) has waited in vain for the United States Environmental Protection Agency (EPA) to respond to its administrative petition requesting that the Agency end the use of a dangerous pesticide in household pet products. Repeatedly, the EPA has kicked the can down the road and betrayed its prior assurances of timely action, even as it has acknowledged that the pesticide poses widespread, serious risks to the neurodevelopmental health of children. Guided by our case law and the history of these proceedings, we hold that the EPA has unreasonably and egregiously delayed the performance of its statutory duties on this critical matter of public health and that the circumstances warrant the extraordinary remedy of issuing a writ of mandamus. We grant NRDC's petition for a writ of mandamus.

**I**

The EPA's stated "core mission" is to "protect[] human health and the environment." *Returning EPA to Its Core Mission*, https://www.epa.gov/home/returning-epa-its-core-mission. Under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136 *et seq.*, the EPA has the task of determining which pesticides may be registered for sale and distribution in the American market, and the Agency may not approve registration of a pesticide that would cause "unreasonable adverse effects" to the environment or human health. 7 U.S.C. §§ 136(bb), 136a(a), 136a(c)(5)(c). The EPA must periodically review registrations for compliance with that requirement by conducting risk assessments. *Id.* § 136a(g)(1)(A)(iii). If the risks to the environment or human health are unreasonable,

the EPA may initiate proceedings to cancel the pesticide's registration, pursuant to 7 U.S.C. § 136d. Any interested person may petition the EPA to cancel a registered pesticide, 40 C.F.R. § 154.10; *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1033 (9th Cir. 2005), and the EPA is required by the Administrative Procedure Act (APA) to resolve the petition "within a reasonable time." 5 U.S.C. § 555(b).

In April 2009, NRDC submitted an administrative petition (Administrative Petition) to cancel the registration of a pesticide called tetrachlorvinphos (TCVP) for use in household pet products.[1] TCVP is a subset of organophosphate pesticides, which were developed from nerve warfare agents used during World War II. *NRDC v. EPA*, 658 F.3d 200, 205 (2d Cir. 2011). Organophosphates pose recognized dangers to the neurodevelopment of children, causing reduced cognitive capacity, delays in motor development, and behavioral problems. NRDC's Administrative Petition followed on the heels of a 2008 peer-reviewed study that found that human beings can absorb TCVP, at measurable, dangerous levels, through contact with pets being treated with TCVP products such as flea and tick shampoos, powders, and collars. M. Keith Davis et al., *Assessing Intermittent Pesticide Exposure from Flea Control Collars Containing the Organophosphorus Insecticide Tetrachlorvinphos*, 18 J. Exposure Sci. & Envtl. Epidemiology 564, 568–69 (2008). The study estimated that "millions of children who could be in direct contact" with TCVP through their pets are at risk. *Id.* at 564. Based in part on these findings, NRDC's Administrative Petition sought cancellation of TCVP in pet products and contended that the EPA had "improperly permitted the continued use of

---

[1] The EPA has registered TCVP in household products, including certain pet products, since 2006.

[TCVP] in pet collars, which has left toddlers . . . exposed to dangerous levels of a toxic pesticide."

For nearly five years, NRDC received no response from the EPA to its Administrative Petition, and in February 2014, NRDC sought a writ of mandamus in the D.C. Circuit to compel the EPA to issue a response. *In re Natural Resources Defense Council (NRDC)*, Case No. 14-1017, Doc. 1478697 (D.C. Cir. Feb. 6, 2014). Seven months after NRDC filed suit, the EPA denied the Administrative Petition, citing a newly-completed risk assessment, which concluded that TCVP's "risks . . . are below the Agency's level of concern." Because the EPA had issued a final response, the parties jointly dismissed the D.C. Circuit suit. *In re NRDC*, Case No. 14-1017, Doc. 1523854 (Nov. 21, 2014).

With the EPA having taken a judicially reviewable final action, NRDC brought suit in this court, challenging the EPA's denial of the Administrative Petition as unlawful. Pet. for Review, *NRDC v. EPA*, Case No. 15-70025, ECF No. 1-2 (9th Cir. Jan. 5, 2015). Several months into the litigation, however, the EPA filed a motion for voluntary remand, asserting that it was completing a new risk assessment which might change its response to NRDC's petition. Based on the EPA's assertions that it was "committed to completing remand proceedings in a reasonable time frame"—and, specifically, its repeated representations that it "intend[ed] to issue a revised response to NRDC's petition within 90 days after finalizing the [revised] risk assessment"—we remanded the case without a deadline in June 2016, over NRDC's objections. Order, *NRDC v. EPA*, No. 15-70025, ECF No. 30 (June 9, 2016).

In December 2016, the EPA issued a revised final risk assessment, which now recognized that children could be exposed to TCVP through contact with pets using TCVP

products and that such exposure posed considerable risks to their health.  Although the risk assessment recognized some "uncertainty as to whether the TCVP pet collars are liquid and/or dust formulated products," it concluded that exposure "to pets treated with TCVP collars are estimated to be of concern regardless of the ratio of liquid/dust assumed."  The risk assessment noted that epidemiological studies have "consistently identified associations with neurodevelopmental outcomes associated with [organophosphate] exposure such as delays in mental development in infants (24–36 months), attention problems and autism spectrum disorder in early childhood, and intelligence decrements in school age children." "Therefore," the report continued, "there is a need to protect children from exposures that may cause these effects."  Upon release of the risk assessment, the EPA repeated its intention to "issue a final revised response to NRDC's 2009 petition . . . within 90 days," and issued a press release announcing that it had had "identified potential risks to people, including children, . . . which exceed the Agency's level of concern."

When 90 days had passed, however, the EPA did not issue its promised response.  Instead, the EPA sent NRDC a cursory letter in March 2017, stating that it intended to review pet-care uses of TCVP and issue a proposed decision in several months, between July and September 2017, alongside its scheduled review of all other TCVP uses.  But again, the EPA's stated deadline came and passed without action, and, in fact, the EPA released a new schedule of registration reviews.  The revised schedule made no reference to TCVP at all.

The EPA asserts that during this time it has been "endeavoring to secure additional data regarding the formulation of the releases from the pet collars [i.e., dust

versus liquid exposure] from Hartz Mountain Corp., the only remaining pet collar registrant, which will allow EPA to provide necessary refinement to the TCVP post-application risk assessment." After several discussions toward the end of 2017, Hartz declined to voluntarily provide such data. The year of 2017 ended without a proposed decision or an updated schedule for review of TCVP, and so did 2018.

On May 29, 2019, NRDC filed the present petition for a writ of mandamus to compel the EPA to issue a final response to the 2009 Administrative Petition. Five days later, on June 3, 2019, the EPA, for the first time, took action to compel Hartz, pursuant to 7 U.S.C. § 136a(c)(2)(B)(i)–(ii), to perform the torsion study that the Agency had requested in 2017.

"This court's jurisdiction to consider this petition is dependent on our jurisdiction to review a final rule." *In re A Community Voice*, 878 F.3d 779, 783 (9th Cir. 2017). Because we would have jurisdiction to review the EPA's final decision resolving NRDC's petition, *see* 7 U.S.C. § 136n(b); *United Farm Workers of Am. v. EPA*, 592 F.3d 1080, 1082–83 (9th Cir. 2010), we have jurisdiction here.

## II

"Issuing a writ of mandamus directing a federal agency to act . . . is an extraordinary remedy justified only in exceptional circumstances," but "[m]andamus is warranted in those rare instances when an agency's delay is egregious." *In re Pesticide Action Network N. Am.*, 798 F.3d 809, 813 (9th Cir. 2015) (citations and internal quotation marks omitted). We are faced with one of those instances.

On three occasions over the last five years, in circumstances materially similar to those presented here, we

have granted petitions for writs of mandamus to compel EPA action after concluding that the EPA had unreasonably delayed its response to serious dangers to human health. *See League of United Latin Am. Citizens v. Wheeler (LULAC)*, 922 F.3d 443, 445 (9th Cir. 2019) (en banc) (mem.) (granting a writ to compel the EPA to take action regarding another organophosphate pesticide, similar to TCVP, which had been linked to neurodevelopmental problems in children, based on "the history and chronology of this matter and the nature of the claims"); *Community Voice*, 878 F.3d at 787–88 (granting writ to compel EPA action on lead paint, which was a threat to children's health, after eight years of delay); *Pesticide Action Network*, 798 F.3d at 811–15 (granting writ in response to EPA's more than eight-year delay regarding the same organophosphate at issue in the later *LULAC* case). In fact, *LULAC* and *Pesticide Action Network* each involved an organophosphate pesticide which was similar to the TCVP at issue here and had also been linked to neurodevelopmental problems in children. Because "[t]his case is similar in the length of delay, absence of a reasonable timetable, and harm to health," *Community Voice*, 878 F.3d at 786, we have no trouble concluding that a writ of mandamus is also warranted here.

In determining that the delay has been sufficiently egregious to warrant the remedy of mandamus, we consider the six-factor standard—the so-called "*TRAC* factors"—established in *Telecomms. Research and Action Ctr. (TRAC) v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984). *Pesticide Action Network*, 798 F.3d at 813. Those factors are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable

or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 79–80 (citations and internal quotation marks omitted).

"The most important [*TRAC* factor] is the first factor, the 'rule of reason,'" *Community Voice*, 878 F.3d at 786 (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)), under which we consider whether the time for agency action has been reasonable. Repeatedly, courts in this and other circuits have concluded that "a reasonable time for agency action is typically counted in weeks or months, not years." *Id.* at 787 (quoting *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004)). On this issue, "the more developed law of the District of Columbia Circuit," *id.* at 782, has held that a "six-year-plus delay is nothing less than egregious." *Rivers United*, 372 F.3d at 419; *see also Core Commc'ns*, 531 F.3d at 857 (six year delay unreasonable); *In re Bluewater Network*, 234 F.3d 1305, 1316 (D.C. Cir. 2000) (nine year delay

unreasonable); *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (per curiam) (six year delay unreasonable).

Our own case law is no different. In *Pesticide Action Network*, we unanimously held that the rule of reason "tipped sharply in favor" of petitioners where, after eight years, the EPA had not issued a final response to an administrative petition requesting cancellation of the organophosphate pesticide chlorpyrifos. 798 F.3d at 814. Observing that the EPA had previously issued a "concrete timeline" and missed it, and that the EPA was now referencing additional uncertainties because of "complex regulatory proceedings," we concluded that the EPA's assurances of action were merely "a roadmap for further delay" and that the "EPA ha[d] stretched the 'rule of reason' beyond its limits." *Id.* Similarly, in *Community Voice*, we held that the EPA's more than eight-year delay responding to an administrative petition requesting that the EPA issue a new rulemaking to "more adequately protect . . . children" from lead-based paint was egregious. 878 F.3d at 783, 787–88.

Here, more than ten years have passed since NRDC first filed its Administrative Petition. Notably, it has repeatedly taken the action of NRDC or a court to prompt any movement by the EPA. Initially, the EPA gave NRDC no response to its Administrative Petition for five years and, later, the EPA only submitted its denial of that Petition seven months *after* NRDC sued for mandamus in the D.C. Circuit—effectively mooting that lawsuit. When NRDC subsequently brought suit against that final decision in this court, briefing went on for several months before the EPA sought and received voluntary remand, again effectively postponing judicial review. To obtain that voluntary

remand, the EPA expressly represented—to this court, to NRDC, and to the public—that it planned to issue a final decision within 90 days of completing a revised risk assessment. But when it completed that risk assessment in December 2016—slating an estimated final response for March 2017—the EPA never made such a response, and it has repeatedly delayed its review ever since. Now, in this litigation, the EPA has represented that it "anticipates" and "intends to issue its response" in September 2021, or possibly June 2021, alongside its other regularly scheduled registration reviews—more than *twelve years* after NRDC filed its Petition.

The EPA contends that it has accomplished "a reasonable amount of progress" during this time, pointing to its discussions with Hartz, the lone registrant of TCVP products, about conducting a "torsion study" on affected pet products, and also its subsequent action to compel Hartz to conduct that study. But in *Community Voice*, we found egregious delay even though the "EPA appears to have done some work." 878 F.3d at 783. Perhaps more importantly, the EPA's voluntary discussions with Hartz ended near the close of 2017, and yet the EPA did not act to compel Hartz's compliance until a year and a half later, on June 3, 2019— exactly five days *after* NRDC filed this suit. Furthermore, the requested "torsion study" itself is intended to determine the liquid-dust ratio of TCVP in pet collar products even though the EPA's own 2016 risk assessment concluded that exposure to pets treated with TCVP collars is of concern "regardless of the ratio of liquid/dust assumed." These actions do not represent "a reasonable amount of progress." Instead, they show the same pattern of delayed action— spurred only by outside prompting—that the EPA seems to have perfected throughout these proceedings.

Whether we measure from April 2009—the time of NRDC's initial Administrative Petition—or from March 2017—the date that a final response should have been made according to the EPA's own representations to this court— the "EPA has stretched the 'rule of reason' beyond its limits."[2] *Pesticide Action Network*, 798 F.3d at 814. Its delay has not been one of weeks or months, but of years, *Community Voice* 878 F.3d at 787, and is all the more glaring because of its history of inaccurate representations and mooted lawsuits. And "[i]n light of the fact that [the Agency's] timetables have suffered over the years from a persistent excess of optimism," *Pub. Citizen Health Research Grp. v. Brock*, 823 F.2d 626, 629 (D.C. Cir. 1987), the "EPA's ambiguous plan to possibly issue a proposed rule [more than twelve years] after the administrative petition is too little, too late," *Pesticide Action Network*, 798 F.3d at 811. The rule of reason "tip[s] sharply in favor" of mandamus relief. *Id.* at 814.

The other *TRAC* factors also support mandamus relief. The second and sixth factors merit little discussion because Congress has supplied no specific timetable for this type of

---

[2] This case is readily distinguishable from the cases in which we have denied a petition for writ of mandamus because of lack of unreasonable delay. In *In re Cal. Power Exch. Corp.*, 245 F.3d 1110 (9th Cir. 2001), "petitioners sought to compel the Federal Energy Regulatory Commission to issue a final order regarding outstanding refund requests . . . a mere four months after the requests were made," *Community Voice*, 878 F.3d at 787, a far cry from the years-long delay here. And in *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 505, 509 (9th Cir. 1997), we denied mandamus when petitioners sought relief after just two to three years of waiting for action on their patent claims, where Congress had expressly given the Department of the Interior five years to respond. In addition to implicating human health more than refund or patent claims do, this case involves a much longer time frame than either of the above cases and no contravening statutory timeline.

EPA action except that it occur "within a reasonable time," 5 U.S.C. § 555(b),[3] and because there is no dispute that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," *TRAC*, 750 F.2d at 79–80.

This leaves the third, fourth, and fifth factors: whether "human health and welfare are at stake," "the effect of expediting delayed action on agency activities of a higher or competing priority," and "the nature and extent of the interests prejudiced by delay." *Id.* These factors strongly support NRDC's petition for mandamus relief.

The EPA has acknowledged that TCVP in pet products poses a serious risk to human health and welfare— specifically, to the neurodevelopment of children. The Agency argues, however—quoting from *In re Pesticide Action Network*, 532 Fed. App'x 649, 651 (9th Cir. 2013)— that because the "EPA, by its nature, regulates almost entirely in the realm of human health and welfare," any acceleration of action on NRDC's petition will delay other agency actions that also impact human health. Essentially, the EPA is arguing that because the third factor (human health) will always be at stake in EPA cases, it merits less weight; and at the same time, the nature of the EPA's work means that expediting this action will necessarily delay "agency activities of a higher or competing priority"—the fourth factor. Specifically, the EPA contends that "[t]he competing priorities here are the more than 300 pesticide

---

[3] The second factor provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason." *TRAC,* 750 F.2d at 79–80 (citations and internal quotation marks omitted).

registration reviews that must be completed by EPA by October 2022 to meet the statutory deadline imposed by FIFRA," and that "giving NRDC's Petition undue precedence over the registration reviews [of other pesticides] may be detrimental to overall protection of human health from pesticides." It therefore argues that TCVP pet products should be reviewed alongside all these other pesticides. The EPA's arguments are misplaced.

First, it argues too much to say that the EPA gets a free pass on several of the *TRAC* factors simply because all of its activities to some extent touch on human health, such that prioritization of one goal will necessarily detract from competing priorities. Second, to support that tenuous position, the EPA quotes to a 2013 unpublished decision in *Pesticide Action Network*—the very case in which two years later we *granted* mandamus.

In the 2015 published opinion, we explained that circumstances had changed. Our prior unpublished decision had reasoned that "the urgency of the action was mitigated somewhat because EPA 'regulates almost entirely in the realm of human health' and had certified the safety of chlorpyrifos in 2006." *Pesticide Action Network*, 798 F.3d at 814 (quoting 532 Fed. App'x at 651). But since the 2013 decision, the EPA had "backtracked significantly from that pronouncement" of safety and had reported that the pesticide posed a significant threat to water supplies. *Id.* Thus, even though the EPA undoubtedly still had a number of competing regulatory concerns impacting human health, we concluded that the "EPA offers no acceptable justification for the considerable human health interests prejudiced by the delay." *Id.* "In view of EPA's own assessment of the dangers to human health posed by this pesticide, we [had] little difficulty concluding [EPA] should be compelled to act

quickly to resolve the administrative petition." *Id.*; *accord Community Voice*, 878 F.3d at 787 (concluding that the third factor favored granting the writ because "there is a clear threat to human welfare," given that the "EPA itself has acknowledged that '[l]ead poisoning is the number one environmental health threat in the U.S. for children ages 6 and younger' and that the current standards are insufficient").

So too here.  The EPA acknowledged in its 2016 risk assessment that exposure "to pets treated with TCVP collars are estimated to be of concern regardless of" the liquid-dust ratio uncertainties that the EPA now claims require more study.  It also recognized that "there is a need to protect children from exposures that may cause [the identified neurodevelopmental] effects."  Its January 2017 press release further confirmed that the risk assessment had "identified potential risks to people, including children, . . . which *exceed the Agency's level of concern*."  And elsewhere, the EPA has stated "that more stringent regulatory restrictions are necessary to protect public health."  Indeed, millions of young children potentially face significant risks to their neurodevelopment from further exposure.  *See* M. Keith Davis, *Assessing Intermittent Pesticide Exposure from Flea Control Collars*, 18 J. Exposure Sci. & Envtl. Epidemiology at 568–69.  In short, "[t]he children exposed [to TCVP] due to the failure of EPA to act are severely prejudiced by EPA's delay, and the fifth factor thus favors issuance of the writ," as does the third. *Community Voice*, 878 F.3d at 787.  The stakes to human health and the interests prejudiced by delay are indisputable.

The EPA's contention that it nonetheless cannot prioritize these *known* dangers to children's health ahead of 300 other regularly-scheduled pesticide registration

reviews—*for which it has identified to this court no specific danger*—is not an "acceptable justification for the considerable human health interests prejudiced by the delay." *Pesticide Action Network*, 798 F.3d at 814. Nor do its appeals to administrative efficiency outweigh the acknowledged risks to children's health. Its assertions of continued uncertainty regarding liquid-dust ratios also cannot justify further delay. Even if the EPA had not already expressly stated that TCVP in pet collars was of concern *regardless* of such ratios, the Agency cannot decline to act "because of the possibility of contradiction in the future by evidence unavailable at the time of action—a possibility that will *always* be present." *Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1290–91 (D.C. Cir. 2000). "[H]owever desirable it may be for EPA [to conduct further study] and even to revise its conclusion in the future, that is no reason for acting against its own science findings in the meantime." *Id.* at 1290.

Finally, "[e]ven assuming that EPA has numerous competing priorities under the fourth factor and has acted in good faith under the sixth factor, the clear balance of the *TRAC* factors favors issuance of the writ." *Community Voice*, 878 F.3d at 787. "[U]nlike *Independence Mining* or *California Power Exchange*"—the two opinions in this circuit to have denied mandamus for unreasonable delay, and which involved only economic interests[4]—here "there is a clear threat to human welfare." *Id.* "In view of EPA's own assessment of the dangers to human health posed by this pesticide, we have little difficulty concluding [EPA] should

---

[4] *Independence Mining* involved interests related to individuals' patent claims, 105 F.3d at 505, 509, and *California Power Exchange* involved refund requests, 245 F.3d at 1125. Both involved shorter time frames than are at issue here.

be compelled to act quickly to resolve the administrative petition." *Pesticide Action Network*, 798 F.3d at 814.

In sum, the EPA's years-long delay on this critical matter of public health has been nothing short of egregious. For more than a decade, the EPA has frustrated NRDC's ability to seek judicial review by withholding final agency action, all the while endangering the wellbeing of millions of children and ignoring its "core mission" of "protecting human health and the environment." *Returning EPA to Its Core Mission*, https://www.epa.gov/home/returning-epa-its-core-mission. Its most recent assurances of expeditious action evoke its earlier broken promises to this court and provide a mere "roadmap for further delay." *Pesticide Action Network*, 798 F.3d at 814. The "primary purpose of the writ in circumstances like these" is "to ensure that an agency does not thwart our jurisdiction by withholding a reviewable decision." *Rivers United*, 372 F.3d at 419 (citing *TRAC*, 750 F.2d at 76). Here, the "EPA's unreasonable delay in responding to the administrative petition has already been the subject of three non-frivolous lawsuits. There should not be a fourth." *Pesticide Action Network*, 798 F.3d at 814–15. We grant NRDC's petition for writ of mandamus.

## III

We order the EPA to issue a full and final response to the Administrative Petition within 90 days of the date that this decision becomes final, either by denying the Petition or by initiating cancellation proceedings. If the EPA initiates cancellation proceedings, we order the EPA to file status reports with this court every two months, until registration of TCVP has been cancelled. We note, however, if the EPA begins cancellation proceedings, then we expect cancellation proceedings to conclude within one year of the date of this

decision, and any extension beyond that must be supported by a showing of good cause. By contrast, if the Agency denies NRDC's Petition on the merits, then NRDC may appeal that final agency action under the standards of the APA and any other applicable law. This court shall retain jurisdiction until the EPA has taken a final action subject to judicial review.

The petition for writ of mandamus is **GRANTED**.